Kurt, please call the next case. 2-11-07-15, Montrejo Rams v. Samard. Good morning. Raymond Samard for the Appalachian Council. This is a manifest way of the evidence case. The commission found that there was a causal connection between the accident and the condition of ill-being to the cervical spine. They also found that the claimant, Mr. Reyes, was in need of surgery to his neck. The circuit court in Kane County found that those findings were contrary to the manifest way of the evidence. The law is very set in this state. I'm sure you've stated it many times in your opinions. There's a reasonable basis for the commission's decision in the record. A reviewing court will affirm. The commission's allowed to draw permissible inferences. And a reviewing court will not reverse unless there is no permissible inference that can be drawn. So did the commission draw permissible inferences in this case? Yes. First on the issue of causal connection, they followed the chain of events criteria that the Supreme Court stated in the Union Starch case, which I've cited. Counsel, that is a recognized way of proving causation. But just to clarify, as I'm looking at the record, neither Dr. Herman nor any other medical providers gave a specific express opinion on causation, did they? That is correct. And I might add that Dr. Salehi never stated either way as to whether it was causal connection or not, which is why it falls down to a chain of events analysis. They applied the history of good health, history of hard labor, an accident immediately followed by a period of disability, leading up to the recommendation for surgery. Mr. Reyes routinely worked 72 hours a week. There's nothing in the record that he had any prior complaints to his neck. He had this accident, which was agreed, and he began a course of treatment and up until the surgical recommendation. I think the circuit court erred in reversing the finding of the commission, and I would ask that you reverse the circuit court. The next issue is, again, a manifest way, the necessity for the surgery. Dr. Herman, the neurosurgeon, and Dr. Bleier, who did a utilization review for the employer, both stated that surgery was indicated. Dr. Bleier said the objective criteria, meaning the MRI and the EMG, supports the need for surgery. Dr. Salehi, the employer's examining physician, said otherwise. This Court has said in many, many cases, and I cited the Odette case, it is the function of the commission to resolve conflicting medical opinions. And that's what they did in this case. They found Drs. Herman and Bleier more persuasive than Dr. Salehi. The commission did its job. In closing, I would ask that you reverse the decision of the circuit court dated July 8, 2011, reinstate the decision of the commission, and remand the matter to the commission for further proceedings. Thank you. Thank you. Good morning. Brad Elward on behalf of Millard Refrigerated. I think the real key issue in the appeal is the issue of the causation with respect to the cervical surgery, and I'd like to really spend my time on that. I acknowledge this is a tough case because there is evidence in the record by, I think, two or three medical reports where the petitioner indicated to the various physicians that he had not had any prior problems with his back or with his neck. But I think this case, the bigger question here is, it remains that there is no medical causation testimony in the record tying the need for this surgery to this accident. That becomes the question, though, Mr. Elward. Is medical testimony essential to support those findings? Do you need medical testimony to come to that conclusion that it was work-related? I think you do in this case. I will acknowledge, obviously, the chain of events theory of causation has existed for a long time. But I think maybe it is time that we examine whether or not that that doctrine applies to cases that are not just losing a finger in a piece of machinery or something that's very obvious to everyone involved, obvious to lay people involved, that there's a causal connection. And that when we have a case, as we do here, where there's complex history, we've got obviously a degenerative condition overlaid on the neck and the low back, but specifically here with the neck. He's got stenosis. He's got degenerative conditions in his neck. These things just don't start and show up on x-rays a month later or MRIs. And that's what we have here. What we're asking this Court to do is look at this case and say, what evidence is there in this record, beyond the petitioner's own self-serving comments to his doctors, that shows a need or shows that this surgery to the cervical area is related to this accident? And the answer is there's nothing. Why isn't his self-serving testimony enough? Pardon me? Why isn't his self-serving testimony enough? Well, I don't think it is when you've got complex facts like this, where you've got a condition that's beyond the realm of general lay people. And I think it presents a situation where what we've got is under the current state of the law, it's too easy to have a claim. And I'm not just saying that from an employer's perspective, but when you can walk in and not present any medical causation testimony and just have the petitioner say, well, I've never had any problems before, we don't have any discovery abilities to go back and look and investigate their prior medical. You're saying to say that the only thing he's required to do is prove good health on event and subsequent condition of ill-being. That's a chain of events. Chain of events? Is that right? Should we abandon that? Is that the idea? I think it's time to take a close look at whether we should in cases such as this. Not across the board. I certainly think that there's a variety of cases where that doctrine is still very valid. But in a case like this where you've got a gentleman with a preexisting condition, he ought to have to be required to come in and present medical opinion testimony that says this is related. It was either caused by or it was aggravated by, and they didn't do that here. Now, I say what kind of a burden is that? I think if you have that type of standard, you're going to weed out some questionable claims. But if it's a valid claim, they're going to have it. And that's what we're asking this Court to take a look at. I think this case, if this isn't the case on the facts, maybe the Court can start thinking about this because I know there's cases in the pipeline coming on this. And this is a type of issue that I think is very significant in workers' comp for employers across the state. What are we going to do with the chain of events when we have a sophisticated injury like this that laypeople can't simply look at and say, oh, obviously it was caused by the accident? Thank you. Any further? Well, first of all, the preexisting condition, aggravation of a preexisting theory, was never raised at the commission. I've addressed that in my brief. I think the issue is waived. That being said, Union Starch and the Westinghouse case cited in my reply brief are not open, obvious injuries like a finger cut off. In Westinghouse, the guy had a preexisting low back condition, and he testified freely, yes, I was still having some back pain from that. They deposed the treating physician, and he said, I can't tell where his pain is from the old accident or the new accident. But yet the commission found a causal connection because after the second accident, there was a marked change in his complaints. He began to lose time from work. He had not lost any time in two years prior to the accident. I think the chain of events rule is a good one, and I don't believe that you should, as counsel asked, that you reverse two opinions of the Supreme Court in Union Starch and in Westinghouse. I might also add that Dr. Salehi, who examined him twice, never brought up the issue of the preexisting condition as a factor. Preexisting condition is a factor only when someone says what he has now is not related or contributed to by the accident but is just the natural progression of the preexisting condition, and all the facts in this case point in the other direction. Yes, he had those radiographic findings. I believe he was unaware that he had them. He was working like a horse, 72 hours a week. He has this accident. The one day that they changed his job, and the treatment begins and leads all the way to a herniated disc. And once again, it's the commission's job to find causation, and I don't believe that this decision was contrary to the manifest way. Thank you. Thank you, counsel. The court will leave the matter under review for disposition.